**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION**

| | |
|---|---|
| BARRINGER CAPITAL GROUP, LLC, d/b/a BARRINGER PRECIOUS METALS and CLEMSON COINS, CURRENCY, BULLION & JEWELRY,<br><br>Plaintiff,<br><br>v.<br><br>PIRATE GOLD & SILVER LLC, d/b/a PIRATE GOLD & SILVER, and MATTHEW GOSSETT, individually,<br><br>Defendants. | Civil Action No.________________<br><br>**COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

Plaintiff Barringer Capital Group, LLC, d/b/a Barringer Precious Metals and Clemson Coins, Currency, Bullion & Jewelry ("Plaintiff"), complaining of Defendants Pirate Gold & Silver LLC, d/b/a Pirate Gold & Silver ("Pirate") and Matthew Gossett ("Gossett") (together, "Defendants"), alleges and says as follows:

## NATURE OF THE ACTION

1. This is an action for unfair competition and false designation of origin under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); for cybersquatting under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1); and for related claims under the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10 et seq., and the common law of South Carolina.

2. Plaintiff, including through its predecessor in interest, has bought, sold, and traded coins, currency, bullion, and jewelry in the United States for decades, including at its most recent Pendleton, South Carolina physical location, which opened in 2023, and has used the service marks WE PAY THE MOST, ALWAYS! and WE PAY MORE, ALWAYS! to identify and distinguish

its services. Defendants, who operate a competing coin and precious-metals business with physical locations in nearby Seneca and Pickens, South Carolina, have recently adopted and are using the confusingly similar slogan "We pay the most!" (the "Infringing Slogan") to solicit the same customers.

3. Separately, Defendants registered or acquired, and controlled, the domain name BarringerPreciousMetals.com (the "Domain"), which incorporates Plaintiff's primary trade name, Barringer Precious Metals, and used it to publish a website that held out Pirate as the "Strategic Affiliate" of "Barringer Precious Metals," linking visitors directly to Pirate's own website. In addition, Defendants advertised multiple e-mail addresses, including desk@barringerprecious.com, trade@barringerprecious.com, vault@barringerprecious.com, pirate@barringerprecious.com, and institutional@barringerpreciousmetals.com in a further attempt to establish an affiliation between Plaintiff and Defendants. Plaintiff never authorized this use and has no such affiliation with Pirate.

4. Plaintiff seeks injunctive relief, transfer of the domain name, damages, Defendants' profits, enhanced and statutory damages, and its attorneys' fees and costs.

**THE PARTIES**

5. Plaintiff Barringer Capital Group, LLC is a limited liability company organized in October 2007 under the laws of the State of Florida, with an address of 7611 Clemson Boulevard (U.S. Highway 76), Pendleton, Anderson County, South Carolina 29670, where it operates a retail showroom.

6. Plaintiff does business under the primary trade name "Barringer Precious Metals" and has been using such trade name since at least as early as July 5, 2023. Plaintiff is unaware of any other business or entity that operates under the name Barringer Precious Metals.

7. Plaintiff conducts its business through three divisions: (a) Clemson Coins, Currency, Bullion & Jewelry ("Clemson Coins"), a retail showroom in Pendleton, South Carolina, together with its website at clemsoncoinsandcurrency.com; (b) the website MorganSilverDollar.com; and (c) Barringer Rare Coins Currency Bullion, through which Plaintiff sells coins and currency on eBay.

8. Defendant Pirate Gold & Silver LLC is, upon information and belief, a South Carolina limited liability company doing business as "Pirate Gold & Silver" with a place of business at 685 By-Pass 123, Unit C, Seneca, South Carolina 29678 as well as a place of business at 127 W. Main Street, Unit A, Pickens, South Carolina 29671.

9. Defendant Matthew Gossett is, upon information and belief, a citizen and resident of Anderson County, South Carolina, and is the owner of Pirate. Upon information and belief, Gossett personally directed, controlled, and participated in the conduct alleged in this Complaint, including the registration, control, and use of the domain name BarringerPreciousMetals.com and the adoption and use of the Infringing Slogan.

**JURISDICTION AND VENUE**

10. This Court has subject-matter jurisdiction over Plaintiff's federal claims under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a), because they arise under the Lanham Act, 15 U.S.C. § 1051 et seq.

11. This Court has jurisdiction over Plaintiff's unfair competition claims under 28 U.S.C. § 1338(b), because they are joined with substantial and related claims under the trademark laws, and supplemental jurisdiction over Plaintiff's remaining state-law claims under 28 U.S.C. § 1367(a), because those claims arise from the same nucleus of operative fact as the federal claims and form part of the same case or controversy.

12. This Court has personal jurisdiction over Defendants because Pirate maintains its places of business in, and is organized under the laws of, South Carolina, Gossett is domiciled in South Carolina, and the acts and omissions alleged in this Complaint were committed in South Carolina and directed at consumers in South Carolina.

13. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendants reside in this District, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including the display of the Infringing Slogan at Pirate's place of business in Seneca, South Carolina.

14. Pursuant to Local Civ. Rule 3.01(B), D.S.C., this action is properly assigned to the Anderson Division. Defendants reside and do business in Oconee County and Pickens County, a substantial part of the events giving rise to the claims occurred in Oconee County and Pickens County, and Plaintiff does business in Anderson County. Oconee County, Pickens County, and Anderson County are all within the Anderson Division. *See* 28 U.S.C. § 121; Local Civ. Rule 3.01(A), D.S.C.

## FACTUAL ALLEGATIONS

### A. Clemson Coins and Its Marks

15. Plaintiff's Clemson Coins division is a retail dealer that buys, sells, and trades coins, currency, gold and silver bullion, jewelry, sterling flatware, and postage stamps from its showroom at 7611 Clemson Boulevard (U.S. Highway 76) in Pendleton, South Carolina.

16. The Clemson Coins business, including through its predecessor in interest, has operated for decades, and since at least 2023 has served customers throughout the Upstate of South Carolina as well as in northern Georgia, western North Carolina, and eastern Tennessee.

17. Before Plaintiff was organized in October 2007, the business now conducted by Plaintiff was operated by Joseph ("Joe") Barringer individually. Plaintiff succeeded to that

business, including its trade names, marks, and goodwill. Mr. Barringer is Plaintiff's sole owner and manager.

18. A central part of Clemson Coins' business is buying coins, bullion, jewelry, and estate collections from members of the public. In soliciting those sellers, Clemson Coins has for years used the slogans WE PAY THE MOST, ALWAYS! and WE PAY MORE, ALWAYS! (together, the "Marks") as service marks to identify Clemson Coins as the source of its retail store services featuring coins, currency, bullion, jewelry, silver flatware and holloware, postage stamps, and loose diamonds.

19. Plaintiff, directly and through its predecessor in interest, has used the Marks continuously in commerce, including on its website, signage, advertising, and social media.

20. Clemson Coins' website at clemsoncoinsandcurrency.com prominently displays the Marks, including on its home page and on a dedicated page devoted to the Marks.

21. Through decades of continuous use, substantial advertising across multiple sources, approximately 700+ customer Google reviews online, and its reputation in the coin and precious-metals community, the Marks have become associated in the minds of consumers with Clemson Coins and no other source. For example, the following unsolicited customer testimonials evidence that customers associate the Marks with Clemson Coins:



Sakib
1 review
10 months ago
Went in to sell some gold and was really paid the **highest prices**. I checked around and they really do pay the most, considerably more. Very pleased with their service and professionalism. Fantastic display of coins, paper ... More
10

Clemson Coins, Currency, Bullion & Jewelry (Owner)
10 months ago
Hi Sakib.... Thank you for your review and stopping in. It was our pleasure doing business with someone who shops around. It makes our job so much easier. Happy New Year! Regards, Joe & Tracy



William Nelson
4 reviews
a year ago
**Very friendly people** and paying the most for your silver and gold
8



Shannon Levengood
1 review
2 years ago
They're **super friendly and knowledgeable and** will pay you the most for your gold.
7

22. The Marks are inherently distinctive as applied to Clemson Coins' services or, in the alternative, have acquired distinctiveness and secondary meaning through Clemson Coins' long, continuous, and substantially exclusive use.

23. On September 17, 2026, Plaintiff filed applications with the United States Patent and Trademark Office to register WE PAY THE MOST, ALWAYS! (Serial No. 50114741) and WE PAY MORE, ALWAYS! (Serial No. 50114745) in standard characters on the Principal Register under Section 1(a) of the Lanham Act, for "[r]etail store services featuring coins, currency, bullion, jewelry, silver flatware and holloware, postage stamps, and loose diamonds" in

International Class 35. Both applications remain pending. True and correct copies of the Trademark Status and Document Retrieval printouts for the applications are attached as *Exhibit 1* and *Exhibit 2*.

24. Plaintiff's rights in the Marks do not depend on registration. Plaintiff owns common-law rights in the Marks arising from its use of them in commerce, which are enforceable under Section 43(a) of the Lanham Act and South Carolina law.

**B. Defendants' Use of "We pay the most!"**

25. Pirate is a direct competitor of Clemson Coins. Upon information and belief, Pirate buys and sells gold, silver, coins, and related items from a storefront at 685 By-Pass 123, Unit C, Seneca, South Carolina, approximately 13 miles from Clemson Coins' showroom, and solicits the same Upstate consumers who buy from and sell to Clemson Coins.

26. Upon information and belief, beginning on or around August 3, 2026, Defendants adopted and began displaying the Infringing Slogan on exterior signage at Pirate's Seneca location and in online advertising of its services.

27. A true and correct photograph of Defendants' storefront at 685 By-Pass 123, Unit C, Seneca, taken on November 16, 2026, showing signage that reads "We Buy Gold & Silver. We pay the most!" beneath Pirate's name and telephone number, is attached as *Exhibit 3*.

28. The Infringing Slogan is identical to the first four words of Plaintiff's mark WE PAY THE MOST, ALWAYS! and is confusingly similar in sight, sound, and meaning to both of the Marks.

29. Defendants use the slogan in connection with services identical to Plaintiff's—purchasing coins, bullion, jewelry, and precious metals from the public—directed to the same class of consumers, in the same geographic market, and through the same types of channels.

30. Defendants were on notice of Plaintiff's rights at least as early as July 8, 2026 via a conversation between Mr. Barringer and Gossett. Moreover, on or about August 13, 2026, Plaintiff, through counsel, notified Pirate in writing of its objections to Pirate's use of the Infringing Slogan and of the BarringerPreciousMetals.com domain name, and, on September 18, 2026, Plaintiff, again through counsel, notified Pirate in writing and demanded that Pirate cease its use of the Infringing Slogan.

31. Defendants have not ceased their use of the slogan. As of November 16, 2026, the Infringing Slogan remained displayed at Pirate's Seneca location.

32. Plaintiff has never licensed or authorized Defendants to use the Marks or any similar slogan.

33. Defendants' use of the Infringing Slogan is likely to cause confusion, mistake, or deception among consumers as to the source of Defendants' services and as to whether Defendants are affiliated, connected, or associated with Clemson Coins, or whether Defendants' services are sponsored or approved by Clemson Coins. Indeed, Defendants' use has resulted in actual confusion among consumers as shown by phone calls from potential customers and questions from customers visiting Clemson Coins.

**C. The BarringerPreciousMetals.com Domain Name and Website**

34. Plaintiff uses the name BARRINGER in its business, including in its legal name, Barringer Capital Group, LLC; in its primary trade name, BARRINGER PRECIOUS METALS; and in the name of its eBay division, BARRINGER RARE COINS CURRENCY BULLION (together, the "Barringer Names"). Plaintiff has been using one or more of the Barringer Names for decades in connection with its business, including prominently and repeatedly on the clemsoncoinsandcurrency.com website, and such use in commerce occurred before Defendants registered or used the Domain.

35. The Domain incorporates Plaintiff's primary trade name, BARRINGER PRECIOUS METALS, in its entirety and is identical or confusingly similar to the Barringer Names.

36. Upon information and belief, Defendant Gossett registered or acquired the Domain on or about June 4, 2026 through Network Solutions, LLC, and Defendants have at all relevant times controlled it. Plaintiff did not register the Domain and never authorized Defendants to register or use it. A true and correct copy of the WHOIS search result for the Domain is attached as *Exhibit 4*.

37. Defendants caused the Domain to resolve to a live, publicly accessible website styled "Barringer Precious Metals," which is Plaintiff's primary trade name (the "BPM Site"). The BPM Site described "Barringer Precious Metals" as an institutional depository and dealer network and displayed statements regarding a nationwide dealer network and vaulted reserves.

38. As captured on or about July 2 and July 3, 2026, the BPM Site repeatedly identified Pirate as the affiliate of "Barringer Precious Metals," including by: (a) displaying on its home page the legend "Strategic Affiliate: Pirate Gold & Silver (SC Upstate)"; (b) stating, in a section titled "Strategic Reserves," "Leveraging our affiliate relationship with Pirate Gold & Silver to maintain deep regional reserves in the South Carolina Upstate"; (c) including in its site navigation a link titled "Pirate Gold Affiliate" accompanied by a "Visit Website" link that carried visitors to Pirate's own website, pirategoldandsilver.com; (d) repeating that "Pirate Gold Affiliate" and "Visit Website" link on its contact page; (e) inviting visitors to "[c]onnect with our institutional desk to discuss vaulting, liquidity, or our strategic affiliate Pirate Gold & Silver" and to "[v]isit our SC Upstate partner location"; (f) providing a dedicated "Affiliate" e-mail address for Pirate on the Domain; and (g) listing Pirate by name, with its e-mail address and website, as an affiliate

depository location for the "SC Upstate." True and correct copies of captures of the BPM Site are attached as *Exhibit 5*.

39. Plaintiff, which, upon information and belief, is the only entity that does business as Barringer Precious Metals, has never been affiliated with Pirate in the manner the BPM Site represented, never entered into any "affiliate relationship" with Pirate, and never authorized Defendants to use the Barringer Names to promote Pirate or to suggest any connection between Plaintiff and Pirate.

40. Defendants' use of the Barringer Names and the Domain was intended to, and did, trade on the goodwill associated with the name BARRINGER, to suggest to consumers that Pirate is part of, affiliated with, or endorsed by Plaintiff, doing business as Barringer Precious Metals, and to divert visitors from the BPM Site to Pirate's business for Defendants' commercial gain.

41. Defendants have no trademark or other intellectual-property rights in the Barringer Names or the Domain; the Domain does not consist of Defendants' legal name or any name by which Defendants are commonly identified; Defendants made no prior bona fide offering of goods or services under the Domain; and Defendants' use of the Domain was commercial and was not a fair or noncommercial use.

42. Plaintiff has raised its objection to the Domain directly with Defendants and repeatedly asked that the Domain be transferred to Plaintiff.

43. Defendants have not transferred the Domain to Plaintiff. Although the content described above is no longer displayed, Defendants continue to control the Domain and can restore that content or other infringing content at any time.

**D. Defendants' Use of Other Businesses' Local Listings**

44. On or about August 16, 2026, Google searches for "coin DEALER seneca SC" and "sell bullion seneca sc" returned local business listings for "Oconee Coins & Prospecting" and "Gold & Silver Buyers, LLC"—businesses that, upon information and belief, are no longer operating—and those listings displayed a photograph of Pirate's storefront and the street address of Pirate's business. True and correct copies of those search results are attached as *Exhibit 6*. After Plaintiff reported the listings to Google, the listings were changed. Upon information and belief, Defendants caused or participated in the alteration of those listings to increase Pirate's online visibility and to attract customers who were searching for other businesses.

**E. Defendants' Willfulness and the Harm to Plaintiff**

45. Defendants' conduct has been knowing, deliberate, and willful. Defendants continued the conduct described above after receiving written notice of Plaintiff's rights and objections.

46. Defendants' conduct has harmed and, unless enjoined, will continue to harm Plaintiff, including by diverting customers and prospective customers; by causing Plaintiff to lose control over its reputation and the goodwill associated with the Marks and the Barringer Names; and by creating a false impression that Plaintiff is connected with Pirate. Because consumers who sell coins, bullion, jewelry, and estate property to a dealer must trust that dealer, harm to the goodwill of the dealer is particularly difficult to measure and repair.

47. Plaintiff has no adequate remedy at law for the continuing injury to its goodwill and reputation and will suffer irreparable harm unless Defendants' conduct is enjoined.

48. Plaintiff has also suffered losses, including, upon information and belief, lost sales and diverted customers in an amount to be proven at trial, and the costs of investigating and attempting to correct Defendants' conduct.

**COUNT I**
**False Designation of Origin and Unfair Competition — Slogans**
**15 U.S.C. § 1125(a)(1)(A)**
**(Against All Defendants)**

49. Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

50. Plaintiff owns valid and protectable common-law rights in the Marks, which Plaintiff used in commerce in connection with its retail store services before Defendants began using the Infringing Slogan.

51. Defendants, without Plaintiff's consent, have used in commerce, in connection with the advertising and rendering of their services, the Infringing Slogan, which is identical or confusingly similar to the Marks.

52. Defendants' use is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, and as to the origin, sponsorship, or approval of Defendants' services and commercial activities by Plaintiff, in violation of 15 U.S.C. § 1125(a)(1)(A).

53. Upon information and belief, Gossett personally directed, authorized, and participated in the infringing conduct and is personally liable for it.

54. Defendants' conduct was and is willful and deliberate, and this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

55. Plaintiff is entitled to injunctive relief under 15 U.S.C. § 1116(a), and to recover Defendants' profits, Plaintiff's damages, and the costs of the action under 15 U.S.C. § 1117(a), together with enhanced damages and reasonable attorneys' fees as the Court finds just.

**COUNT II**
**False Designation of Origin and False Association — Barringer Names**
**15 U.S.C. § 1125(a)(1)(A)**
**(Against All Defendants)**

56. Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

57. Plaintiff owns protectable rights in the Barringer Names, including its primary trade name, Barringer Precious Metals, which Plaintiff used in commerce before Defendants registered or used the Domain.

58. Defendants, without Plaintiff's consent, used the Barringer Names and the Domain in commerce, in connection with the advertising and promotion of their services, and made false and misleading representations of fact on the BPM Site, including that Pirate is the "Strategic Affiliate" of, and has an "affiliate relationship" with, "Barringer Precious Metals," Plaintiff's primary trade name.

59. Defendants' conduct was likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiff, and as to the origin, sponsorship, or approval of Defendants' services by Plaintiff, in violation of 15 U.S.C. § 1125(a)(1)(A).

60. Upon information and belief, Gossett personally directed, authorized, and participated in the conduct alleged in this Count.

61. Defendants' conduct was willful, and Plaintiff has been damaged and will continue to be irreparably harmed unless Defendants are enjoined. Plaintiff is entitled to the remedies provided by 15 U.S.C. §§ 1116 and 1117(a).

**COUNT III**
**Cybersquatting**
**15 U.S.C. § 1125(d)(1)**
**(Against All Defendants)**

62. Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

63. The Barringer Names were distinctive at the time Defendants registered the Domain.

64. The Domain is identical or confusingly similar to the Barringer Names.

65. Defendants registered, trafficked in, or used the Domain with a bad-faith intent to profit from the Barringer Names, as shown by, among other things: Defendants' lack of any intellectual-property rights in the Barringer Names; the fact that the Domain does not consist of Defendants' legal name or a name commonly used to identify them; Defendants' lack of any prior bona fide offering of goods or services under the Domain; Defendants' intent to divert consumers to Pirate's website for commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the BPM Site; and Defendants' use of the Domain to promote Pirate's business. See 15 U.S.C. § 1125(d)(1)(B)(i).

66. Defendants did not believe, and had no reasonable grounds to believe, that their use of the Domain was a fair use or otherwise lawful.

67. Plaintiff is entitled to an order directing the transfer of the Domain to Plaintiff under 15 U.S.C. § 1125(d)(1)(C), and, at Plaintiff's election at any time before final judgment, to statutory damages of not less than $1,000 and not more than $100,000 per domain name under 15 U.S.C. § 1117(d), in lieu of actual damages and profits, together with its costs and, in this exceptional case, its reasonable attorneys' fees under 15 U.S.C. § 1117(a).

**COUNT IV**
**Violation of the South Carolina Unfair Trade Practices Act**
**S.C. Code Ann. §§ 39-5-20 and 39-5-140**
**(Against All Defendants)**

68. Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

69. Defendants' conduct described above—including their use of a slogan confusingly similar to Plaintiff's Marks and their use of the Barringer Names and the Domain to represent a nonexistent affiliation with Plaintiff—constitutes unfair or deceptive acts or practices in the conduct of trade or commerce in violation of S.C. Code Ann. § 39-5-20(a).

70. Defendants' conduct has an adverse impact on the public interest. It deceives members of the public, who rely on a dealer's identity and reputation when deciding where to sell or buy valuable coins, bullion, jewelry, and estate property, as to the source and affiliation of the services offered; it is directed at the public at large through signage and the internet; and it has the potential for repetition, because the slogan remains in public view and Defendants continue to control the Domain.

71. As a direct and proximate result of Defendants' conduct, Plaintiff suffered an ascertainable loss of money or property, including lost sales, diverted customers, and costs of corrective measures.

72. Defendants' violations were willful or knowing. Plaintiff is entitled to actual damages, to treble damages, and to its costs and reasonable attorneys' fees under S.C. Code Ann. § 39-5-140, and to injunctive relief.

## COUNT V
## Common-Law Trademark Infringement and Unfair Competition
## (Against All Defendants)

73. Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

74. Plaintiff owns common-law rights in the Marks and, as alleged above, in the Barringer Names, acquired, directly and through its predecessor in interest, through use in South Carolina in good faith and before Defendants' use.

75. Defendants' use of the Infringing Slogan, the Barringer Names, and the Domain, without Plaintiff's consent, is likely to confuse consumers as to the source, sponsorship, or affiliation of Defendants' services, infringes Plaintiff's common-law rights, and constitutes unfair competition under South Carolina common law.

76. Defendants acted willfully, intentionally, and in conscious disregard of Plaintiff's rights. Plaintiff has been damaged and is entitled to injunctive relief, compensatory damages, and, because of Defendants' willful and reckless conduct, punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendants and grant the following relief:

A. A preliminary and permanent injunction enjoining Defendants, and their officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with them who receive actual notice of the order, from (i) using the Infringing Slogan, the phrase "We pay more," or any other slogan confusingly similar to the Marks in connection with the advertising, promotion, or rendering of coin, currency, bullion, jewelry, or precious-metals services, including on signage,

in advertising, on websites, on social media, and in online business listings; (ii) using the Barringer Names or any confusingly similar name; (iii) representing that Defendants are affiliated, connected, or associated with Plaintiff or its principals; and (iv) registering, using, or trafficking in the Domain or any other domain name incorporating the Barringer Names;

B. An order under 15 U.S.C. § 1125(d)(1)(C) directing Defendants and the domain-name registrar to transfer the Domain to Plaintiff within seven (7) days of the Court's order;

C. An order under 15 U.S.C. § 1116(a) directing Defendants to file with the Court and serve on Plaintiff, within thirty (30) days after entry of any injunction, a sworn written report setting forth in detail the manner and form in which Defendants have complied;

D. An order under 15 U.S.C. § 1118 directing Defendants to remove, deliver up, and destroy all signage, advertising, and other materials bearing the Infringing Slogan or the Barringer Names;

E. An award of Defendants' profits, Plaintiff's actual damages, and the costs of the action under 15 U.S.C. § 1117(a), enhanced as the Court finds just, in an amount to be determined at trial;

F. In the alternative to actual damages and profits on Count III, at Plaintiff's election, statutory damages under 15 U.S.C. § 1117(d) in the maximum amount allowed;

G. Actual damages, trebled under S.C. Code Ann. § 39-5-140 on account of Defendants' willful and knowing violations;

H. Punitive damages on Count V in an amount to be determined by the jury;

I. An award of Plaintiff's reasonable attorneys' fees and costs under 15 U.S.C. § 1117(a) and (d) and S.C. Code Ann. § 39-5-140, and as otherwise permitted by law;

J. Pre-judgment and post-judgment interest as allowed by law; and

K. Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

PARKER POE ADAMS & BERNSTEIN LLP

s/ Amy Allen Hinson
Amy Allen Hinson (Fed. Bar No. 11703)
Christy Y. Litz (Fed. Bar No. 106369)
110 East Court Street, Suite 200
Greenville, South Carolina 29601
Telephone: (864) 577-6368
Facsimile: (864) 242-9888
E-mail: amyhinson@parkerpoe.com
Email: christylitz@parkerpoe.com

*Attorneys for Plaintiff*

November 24, 2026
Greenville, South Carolina